IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ALFRED L. WILLIAMS, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:16CV122 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Alfred L. Williams, Jr. ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits ("DIB") under Title II of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.    PROCEDURAL HISTORY

Plaintiff protectively filed his application for DIB on July 20, 2012, alleging a disability onset date of November 21, 2008. (Tr. at 181, 333-34.)[1] His claim was denied initially (Tr. at 238-50, 287-90), and that determination was upheld on reconsideration (Tr. at 251-67, 275-82). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 283-84.) Plaintiff, along with his attorney, attended

---

[1] Transcript citations refer to the Administrative Record [Doc. #6].

the subsequent hearing on July 8, 2014. (Tr. at 181.) Plaintiff amended his alleged onset date to March 17, 2011 at the hearing. (Id.) The ALJ ultimately determined that Plaintiff was not disabled within the meaning of the Act (Tr. at 190), and, on December 21, 2015, the Appeals Council denied Plaintiff's request for review of that decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review. (Tr. at 1-6.)

## II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the] review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

2

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

3

Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes at step three that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

4

"perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since his alleged onset date. Plaintiff therefore met his burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> residuals of injuries to the left lower extremity including a 1991 gunshot wound and a 2006 hip fracture; diabetes mellitus; Graves' disease; degenerative joint disease of the left knee; right plantar fasciitis; degenerative disc disease of the cervical spine; and history of a learning disorder.

(Tr. at 183.) The ALJ found at step three that none of these impairments met or equaled a disability listing. (Tr. at 184-85.) As part of the analysis, the ALJ evaluated Plaintiff's mental impairment and found that he had no restriction in activities of daily living and no difficulties in social functioning, but that Plaintiff had moderate limitations in concentration, persistence,

5

Case 1:16-cv-00122-CCE-JEP   Document 13   Filed 10/31/16   Page 5 of 13

and pace based on his history of a learning disorder. The ALJ assessed Plaintiff's RFC and determined that he could perform:

> sedentary work as defined in 20 CFR 404.1567(a) except that he could only occasionally climb ramps and stairs, and could never climb ladders, ropes and scaffolds. The claimant could frequently kneel, crouch and crawl. Finally, the claimant was limited to simple, routine, repetitive tasks [as conceded by the Disability Determination Services].

(Tr. at 185 (bracketed language in original).)

Based on this determination, the ALJ found under step four of the analysis that Plaintiff could not return to any of his past relevant work. (Tr. at 189.) The ALJ then further determined at step five that Plaintiff's "additional limitations had little or no effect on the occupational base of unskilled sedentary work." (Tr. at 190.) The ALJ therefore applied the Medical-Vocational Guidelines ("the grids") contained in 20 C.F.R. Chapter III, Part 404, Subpart P, Appendix 2, and found that a finding of not disabled was directed by Medical-Vocational Rule 201.19. Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Id.)

Plaintiff now challenges the ALJ's decision on two fronts. First, he contends that the RFC fails to adequately account for his moderate limitations in concentration, persistence, and pace in accordance with Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015). Second, Plaintiff argues that the ALJ failed to properly consider the medical opinions of Dr. Robert G. Kelly, Plaintiff's longtime treating physician, and Dr. Peter Morris, a consultative examiner.

   A.   Mascio

In Mascio, the Fourth Circuit held that "an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to

6

simple, routine tasks or unskilled work." 780 F.3d at 638 (quotation omitted). This is because "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." The Fourth Circuit further noted that

> [p]erhaps the ALJ can explain why Mascio's moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in Mascio's residual functional capacity. For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect Mascio's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. But because the ALJ here gave no explanation, a remand is in order.

Id. (internal citation omitted).

Here, as in Mascio, the ALJ found Plaintiff moderately limited in terms of concentration, persistence, or pace, but included a limitation to simple, routine, repetitive tasks as the sole mental restriction in his RFC. (Tr. at 184-85.) The ALJ then applied the grids at step five for sedentary unskilled work,[4] and further found that the "additional limitations had little or no effect on the occupational base of unskilled sedentary work."

---

[4] At step five,

> the regulations establish "grids" that take administrative notice of the availability of job types in the national economy for persons having certain characteristics, namely age, education, previous work experience, and residual functional capacity. Each grid table, however, only considers the strength or "exertional" component of the claimant's disability in determining whether jobs exist that the claimant is able to perform in spite of his disability. For that reason, the regulations themselves specifically provide that where the claimant's impairment is nonexertional—not manifested by a loss of strength or other physical abilities—or is marked by a combination of exertional and nonexertional impairments, the grids' Rules are not conclusive, and full individualized consideration must be given to all relevant facts of the case. Id. Part 404, subpart P, Appendix 2, § 200.00(a), (d)–(e); 20 C.F.R. § 404.1569. In particular, the regulations note that individualized consideration must be given when nonexertional impairments further narrow the range of jobs available to the claimant, considering his exertional impairments. Id. Part 404, subpart P, Appendix 2, § 200.00(d)(2).

Grant v. Schweiker, 699 F.2d 189, 191-92 (4th Cir. 1983).

In considering Plaintiff's Mascio challenge, the Court has considered the ALJ's findings at each step of the sequential evaluation process, set out below, and concludes that the ALJ's decision, which was issued prior to the decision in Mascio, does not include the explanation and analysis directed by Mascio.

As noted above, in assessing Plaintiff's mental impairment and the impact of that impairment at step two, the ALJ included Plaintiff's "history of a learning disorder" as a severe impairment. (Tr. at 183.) Plaintiff also alleged that he suffered from depression and anxiety, and in considering that allegation at step two, the ALJ noted that the medical evidence revealed a "remote history of medication treatment for depression." (Id.) However, the ALJ concluded in that "in the absence of medical records showing ongoing complaints or treatment for related symptoms, it is reasonable to conclude that these conditions have not resulted in any significant limitations on the claimant's ability to do basic work activities and are therefore found to be non-severe impairments." (Id.) Thus, the only mental impairment included at step two was Plaintiff's history of learning disability.

In evaluating Plaintiff's mental impairment at step three, the ALJ found that Plaintiff had no restriction in activities of daily living and no difficulties in social functioning, but that Plaintiff had moderate limitations in concentration, persistence, and pace based on school records, which reflected that Plaintiff:

> received learning disability services, particularly in reading and spelling. In 10th grade, his achievement scores ranged from 6 to 3.4 years below grade level. However, the claimant has a strong work history as an electrician/carpenter as an adult, suggesting that his adaptive functioning is quite high. Indeed, but for the school records, a mental impairment of any kind would not even be suspected.

8

Case 1:16-cv-00122-CCE-JEP Document 13 Filed 10/31/16 Page 8 of 13

(Tr. at 184-85). The ALJ did not provide any further explanation at step three regarding his finding that Plaintiff had moderate difficulties with regard to concentration, persistence, or pace. (Tr. at 184.)

In assessing Plaintiff's RFC before proceeding to step four, the ALJ noted that Plaintiff:

> testified that he was in learning disability classes starting in 3rd grade. He does not have a high school diploma. He has a work history in construction and electrical work, but he is no longer able to crawl into attics and crawl spaces during hot summers and cold winters due to his diabetes mellitus and leg issues.

(Tr. at 186.) The ALJ also noted that Plaintiff's treating primary care physician, Dr. Robert Kelly, opined that Plaintiff was disabled based on his physical limitations and his "decreased ability to be retrained for other work activity due to his learning disabilities." (Tr. at 188.) In his opinion, Dr. Kelly noted that Plaintiff "has a learning disability and dropped out of school when he was in the 10th grade," and Dr. Kelly noted that he did not think Plaintiff "is a candidate for trying to retrain or learn due to his learning disability." (Tr. at 684.) The ALJ gave Dr. Kelly's opinion "no weight," and noted that "Dr. Kelly is not a vocational expert to know whether the claimant can be retrained despite his reported learning disability." (Tr. at 188.) The ALJ then gave "significant weight" to the State agency medical consultants, but the ALJ noted that "mental limitations have been added due to the claimant's history of learning disorder though, as stated, his past work somewhat belies this." (Tr. at 188.) Finally, in summarizing the basis for the RFC, the ALJ noted that "[w]hile the claimant has a history of learning disorder, he has performed skilled work as an electrician." (Tr. at 188.)[5] The ALJ

---

[5] Although the ALJ refers to Plaintiff's past work as that of an electrician, Plaintiff testified that he never had an electrician's license. (Tr. at 234.) Plaintiff testified that he had difficulty with the work due to his problems with reading, writing, and spelling, and he testified that he did not ever try to take the licensing test to become an electrician because of his "issues with being able to read and understand words." (Tr. at 234.)

9

then adopted the RFC limiting Plaintiff to simple, routine, and repetitive tasks, with no further analysis or explanation as to how this limitation reflected Plaintiff's mental impairment, particularly with respect to the moderate limitations in concentration, persistence, and pace that the ALJ had found.

Defendant now suggests that Plaintiff's referenced work history, along with Plaintiff's ability to perform at least limited work as an electrician's assistant during his alleged disability period, served as an adequate explanation for omitting any concentration-specific restrictions in the RFC. However, such inferences are insufficient in light of Mascio. "Under Mascio, if the ALJ determines that the claimant's moderate difficulties in concentration, persistence, and pace do not translate into a limitation in the claimant's RFC, the written decision must say so." Williams v. Colvin, No. 3:13CV701, 2015 WL 9094803, at *12 (W.D.N.C. Dec. 16, 2015) (citing Mascio, 780 F.3d at 638). Nowhere in the instant decision does the ALJ address the issue of how Plaintiff's moderate difficulties in concentration, persistence, and pace are reflected in the RFC.

Moreover, adding an extra layer of confusion, the RFC assessment itself indicates that "the claimant was limited to simple, routine, repetitive tasks [as conceded by the Disability Determination Services]." (Tr. at 185 (bracketed language in original).) However, there was no such finding by the Disability Determination Services. The two state agency mental assessments rendered in this case did not consider or address Plaintiff's learning disorder, and instead considered Plaintiff's depression and anxiety, and ultimately found no severe mental impairment. The state agency consultants concluded that as a result of depression and anxiety, Plaintiff experienced mild difficulties in both social functioning and concentration,

persistence, or pace, and no limitations in other areas of functioning. (Tr. at 244-45, 259-60.) Both state agency consultants therefore concluded that Plaintiff did not suffer from any mental impairments. Thus, it is not clear why the ALJ included in the RFC a limitation to simple, routine, repetitive tasks "as conceded by the Disability Determination Services." (Tr. at 185.) At the very least, the ALJ's reference to the findings of Disability Determination Services fails to clarify his reasons for omitting concentration limitations from the RFC after having found moderate limitations in concentration, persistence and pace. Accordingly, the Court concludes that the ALJ failed to build an adequate, logical bridge from the evidence he relied upon to the ultimate RFC determination. See Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (holding that an ALJ must "build an accurate and logical bridge from the evidence to his conclusion.") (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)).[6]

---

[6] The Court also notes that this lack of explanation is further compounded by the use of the grids. To the extent the ALJ equated "unskilled" work with the mental RFC in applying the grids, this Court has previously found that a limitation to "simple, routine, repetitive tasks" is narrower than unskilled work. Boler v. Colvin, No. 1:10CV451, 2013 WL 5423647, at *4 (M.D.N.C. Sept. 26, 2013) ("[I]t is clear that 'simple, routine, repetitive work is a narrower category (meaning greater limitations) than unskilled work' in general." (quoting McClendon v. Astrue, No. 1:10CV411, 2012 WL 13525, at * 7 (M.D.N.C. Jan. 4, 2012) (unpublished)). "Unskilled work" is a term of art, defined as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 416.968(a). This Court, along with others within the Fourth Circuit, has held that "whether or not unskilled work squares with a claimant's particular mental limitations presents a fact-specific determination." Boler, 2013 WL 5423647, at *4 (citing Smith v. Schweiker, 719 F.2d 723, 725 (4th Cir. 1984)). Here, it is not clear how a reference to "unskilled" work would capture, in functional terms, the consequences of Plaintiff's deficiencies found by the ALJ. Boler, 2013 WL 5423647, at *4 ("Regardless of whether an ALJ relies on the grids or VE testimony, his step five analysis must capture, in functional terms, 'the concrete consequences of a claimant's deficiencies' as supported by the substantial evidence." (quoting Cox v. Astrue, 495 F.3d 614, 620 (8th Cir. 2007)). In applying the grids, the ALJ noted that Plaintiff "has not had a substantial loss of ability to meet any of the mental activities generally required by competitive, remunerative, unskilled work on a sustained basis including understanding, remembering, and carrying out simple instructions; responding appropriately to supervision, coworkers and usual work situations; and dealing with changes in a routine work setting as described in SSR 85-15." (Tr. at 190.) However, it is not clear how the ALJ reconciled that general conclusion with his finding that Plaintiff's learning disorder was a severe impairment that limited his ability to do basic work activities and his finding that Plaintiff had moderate difficulties in concentration, persistence, and pace. These are all issues best addressed by the ALJ in the first instance with the benefit of the Fourth Circuit's decision in Mascio.

11

B.     Physician Opinions

Plaintiff next contends that the ALJ failed to properly weigh the medical opinions rendered by Dr. Kelly and Dr. Morris. Defendant concedes that the ALJ failed to explicitly weigh – or even mention – Dr. Morris' consultative opinion, but asserts (1) that "the ALJ implicitly considered [Dr. Morris'] findings through his consideration of a cumulative assessment during state agency review that Plaintiff was capable of medium work" (Def.'s Br. [Doc. #12] at 13) (citing Tr. at 188, 257), and (2) that the ALJ's failure "has no effect on the outcome of the case" as "the ALJ afforded Plaintiff a more restrictive RFC for sedentary work than was assessed by Dr. Morris" (Def.'s Br. at 14).[7] To the extent that Defendant contends that the ALJ sufficiently addressed the relevant evidence by giving weight to the state agency consultant's review of the evidence, the Court concludes that simply assigning significant weight to the state agency consultant's opinion does not satisfy the ALJ's obligation to analyze and weigh the evidence and then sufficiently explain that determination as required by the regulations. As this Court has previously noted:

> "This argument misunderstands the role of the state agency consultants. The ALJ is required to balance conflicting evidence and make a determination of disability, not the consultants." Garner v. Colvin, 1:12CV1280-WO-JLW, 2015 WL 710781, at *8 (M.D.N.C. Feb. 18, 2015) (adopted March 16, 2015). In other words, where, as here, an ALJ fails to properly weigh other relevant opinion evidence, particularly evidence provided by examining and treating physicians, he cannot remedy this omission simply by adopting the opinion of the State agency physicians. To allow such a rule would entirely circumvent the Act's directives regarding not only the general role of the ALJ in the decision-making process, but also its specific requirements regarding the weighing of opinion evidence. See 20 C.F.R. § 404.1527; see also SSR 96-6p.

---

[7] The Court notes that Dr. Morris' review of systems also states that Plaintiff was "[p]ositive for depression, anxiety, and cognitive problems" (Tr. at 806), but it does not appear that a mental consultative examination was undertaken.

> The Court of Appeals for the Fourth Circuit has instructed that "[a] necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why. . . . If the reviewing court has no way of evaluating the basis for the ALJ's decision, then 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.' " Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (quoting Florida Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985)).

Buie v. Colvin, No. 1:15CV762, 2016 WL 5415757 (M.D.N.C. Sept. 28, 2016).

Finally, to the extent that Defendant alternatively contends that the ALJ's error was harmless, the Court need not resolve that contention at this time, since Plaintiff's contentions can be addressed further by the ALJ in light of the recommendation of remand set out above.[8]

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for proceedings consistent with this Recommendation. To this extent, Defendant's Motion for Judgment on the Pleadings [Doc. #11] should be DENIED, and Plaintiff's Motion for Summary Judgment [Doc. #8] should be GRANTED. However, to the extent that Plaintiff's motion seeks an immediate award of benefits, it should be DENIED.

This, the 31st day of October, 2016.

                                                      /s/ Joi Elizabeth Peake
                                                      United States Magistrate Judge

---

[8] Similarly, the Court need not further consider Plaintiff's contentions regarding Dr. Kelly's opinion at this time. The Court does note that although the ALJ rejected Dr. Kelly's opinion because he was not a "vocational expert," it does not appear that there was any testimony or evaluation by an actual vocational expert addressing the impact of Plaintiff's learning disability in this case.

13